**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PASTORS PROTECTING YOUTH, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. _____ |
| v. | ) ) | Judge _____ |
| Lisa Madigan, Illinois Attorney General, in her Official Capacity, | ) ) ) ) ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Pastors Protecting Youth, Civil Liberties for Urban Believers, Pastor Steven K. Stultz, Pastor Frank Teesdale, Pastor Brenda Bravatty, Pastor Enio Bravatty, and Pastor Arthurine Wilkinson, by their attorneys Mauck & Baker, LLC, hereby request a declaratory judgment against Defendant and in support state as follows:

**THE CASE IN CONTROVERSY**

1. Many pastors, including the Plaintiffs herein, are employed to preach, teach, and counsel people that human sexuality, as ordered by its Creator (God) and His Word, the Bible, is to be expressed and enjoyed only in a monogamous relationship between one man and one woman within the framework of marriage.

2. These pastors teach that homosexual conduct is contrary to God's purpose for humanity and a disorder of God's creation which can be resisted or overcome by those who seek to be

faithful to God and His Word. This is what they say to those who seek their counsel—including minors.

3. The First Amendment to the United States Constitution serves to protect the inalienable rights and interests of these pastors to both speak about and exercise these beliefs. The First Amendment further protects the rights of the pastors' counselees to receive speech, to make personal decisions, and to exercise their religious beliefs.

4. A majority of the Illinois General Assembly, however, declared in the newly enacted Youth Mental Health Protection Act (the "Act"), (**Exh. A, Act**), which became effective January 1, 2016, that "[b]eing lesbian, gay, or bisexual is not a disease, disorder, illness, deficiency, or shortcoming," 405 ILCS 48/5. The stated purpose of the Act is "to protect lesbian, gay, bisexual and transgender youth from sexual orientation change efforts, also known as conversion therapy." 405 ILCS 48/10.

## KEY UNCONSTITUTIONAL PROVISIONS OF THE ACT

5. The Act defines "sexual orientation change efforts" to include:

> any practices or treatments that seek to change an individual's sexual orientation, as defined by subsection (o-1) of Section 1-103 of the Illinois Human Rights Act, including efforts to change behaviors or gender expressions or to eliminate or reduce sexual or romantic attractions or feelings towards individuals of the same sex. 405 ILCS 48/15.

The definition excludes:

> counseling or mental health services that provide acceptance, support, and understanding of a person without seeking to change sexual orientation or mental health services that facilitate a person's coping, social support, and gender identity exploration and development, including sexual orientation neutral interventions to prevent or address unlawful conduct or unsafe sexual practices, without seeking to change sexual orientation. Id.

6. The Act, however, does not exclude counseling persons or minors who genuinely desire to change their sexual orientation, behaviors, or gender expressions or who wish to eliminate or reduce sexual or romantic attractions or feelings towards individuals of the same sex.

7. Section 25 of the Act further provides that:

> *No person or entity* may, in the conduct of any trade or commerce, use or employ any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact in advertising *or otherwise offering conversion therapy services* in a manner that *represents* homosexuality as a mental *disease, disorder, or illness*, with intent that others rely upon the concealment, suppression, or omission of such material fact. A violation of this Section constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act.

405 ILCS 48/25. (Emphasis added).

8. Unlike similar laws which have been litigated, the Act goes beyond regulating licensed "mental health providers" who counsel minors, to more broadly prohibit "*any* person or entity . . . in the conduct of any trade or commerce" (emphasis added) from representing "homosexuality as a mental disease, disorder, or illness" with "intent that others rely upon the concealment, suppression, or omission of such material fact." 405 ILCS 48/25.

9. Furthermore, Section 25 is not limited to counseling minors but prohibits offering such counseling services to any person, regardless of age.

10. A plain reading of Section 25 threatens the Plaintiffs with financial liability under the Illinois Consumer Fraud and Deceptive Business Practices Act if they continue to represent to others, in the course of their employment and counseling members of their congregation, that homosexuality is a disorder or illness.

11. The State's broad attempt at criminalizing any dissenting views on homosexuality is evident from the beginning of the Act where the State asserts that "[b]eing lesbian, gay, or bisexual is not a disease, disorder, illness, deficiency, or shortcoming." 405 ILCS 48/5. It is

apparent that the State seeks to regulate more than just medical opinion on homosexuality, it seeks to eliminate any and all negative views, including the view that homosexuality is a "shortcoming."

12. The Act also effectively threatens to deprive minors and others with unwanted same-sex attraction the ability to hear speech or obtain pastoral counseling from those, like the pastor Plaintiffs, that they believe would help them to resist or overcome their unwanted attractions or behaviors and remain faithful to God's created order.

13. Both the General Assembly and Governor Rauner through the Amendatory veto process failed to provide an exemption for pastoral counseling, thus necessitating this litigation seeking declaratory relief.

## THE PARTIES

14. Plaintiff Pastors Protecting Youth, ("PPY"), is an unincorporated association comprised of pastors in Illinois which seeks to protect the rights of pastors to offer pastoral counseling on issues related to sexual identity according to Biblical principles and seeks to protect the rights of young people in the church, church members, and others.

15. Civil Liberties for Urban Believers, ("CLUB"), is an unincorporated association of churches organized to promote civil liberties for urban believers.

16. Plaintiff Pastor Steven K. Stultz is the lead pastor of Nu Church Ministry and Development House, a church located at 3501 W. Fillmore Street, Chicago, IL 60624.

17. Plaintiff Frank Teesdale is the lead pastor of Garfield Ridge Baptist Church located at 5520 South Narragansett Avenue, Chicago, IL 60638.

18. Plaintiff Pastor Brenda Bravatty is an assistant pastor at Casa Misericordia Elim located at 5921 West Dickens Avenue, Chicago, IL 60639.

19. Plaintiff Pastor Enio Bravatty is the lead pastor at Casa Misericordia Elim located at 5921 West Dickens Avenue, Chicago, IL 60639.

20. Plaintiff Pastor Arthurine Wilkinson is the lead pastor of Manifested Glory International Ministries located at 14130 South Indiana Avenue, Riverdale IL 60827.

21. These Plaintiffs provide pastoral counseling, which includes sexual identity counseling, as part of their ministries and all receive compensation for their pastoral work. Their counseling extends to both minors and adults and includes members and nonmembers of their congregations.

22. These pastors also have standing to assert the rights of those persons and minors in their congregations who seek their counseling in their efforts to resist, understand, or overcome any unwanted attractions or behaviors and remain faithful to God's created order. A more detailed description of interests and rights of these persons and minors is set forth below.

23. Defendant Lisa Madigan is the Illinois Attorney General responsible with enforcement of the State's laws.

## JURISDICTION AND VENUE

24. This court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 as it arises under the First Amendment and Fourteenth Amendment to the Constitution of the United States and under 42 U.S.C. §1983 and 28 U.S.C. §§2201 and 2202. This Court has authority to award attorney fees pursuant to 42 U.S.C. §1988, 775 ILCS 35/20, and 740 ILCS 23/5(c). The state law claims are so closely related to the federal claims as to create supplemental jurisdiction under 28 U.S.C. §1367(a).

25. Venue is proper in this court because all of the Plaintiffs are located in Cook, DuPage, Kane, and Will Counties, Illinois.

**GENERAL FACTUAL ALLEGATIONS ABOUT
PLAINTIFFS' BELIEFS, SPEECH, AND MINISTRIES**

26. The Plaintiffs' duties include pastoral counseling for their congregations. These counseling services span a wide range of issues including, but not limited to, martial counseling, addiction counseling, and financial counseling. A more detailed description of Plaintiffs' backgrounds, beliefs, and counseling activities is set forth in their declarations. (**Group Exh. B, Pastors' Declarations**).

27. The pastors do not charge for counseling services but they are compensated for their pastoral duties, which include pastoral counseling.

28. Some of the Plaintiffs currently counsel, or have counseled, individuals struggling with unwanted same-sex attraction. The pastors believe that they have an obligation and a calling to provide counseling on sexual identity to anyone seeking help with those issues and all of the Plaintiffs seek the right to perform sexual identity counseling in the future.

29. Plaintiffs engage solely in "talk therapy" and do not utilize medication or coercion.

30. For the Plaintiffs, the Bible is the final authority on all matters pertaining to sexuality. The Bible's teaching on the issue of gender identity and homosexuality spans the Old and New Testaments and informs the Plaintiffs' religious beliefs, convictions, teaching, and counseling.

31. The Plaintiffs believe, as the Bible teaches, that "all have sinned, and come short of the glory of God; . . . ." (Romans 3:23 (King James)). Therefore, every sin, including homosexual conduct, represents a shortcoming, disease, illness, or disorder in a fallen world.

32. While the Plaintiffs speak, teach, and counsel others that all types of sin are a disorder and a product of the Fall of mankind, the Act only prohibits the pastors from representing that homosexual conduct is a sin or disorder. The Act, therefore, dictates which parts of the Bible pastors may or may not use to counsel their counselees.

33. Because the Plaintiffs adhere to traditional Christian theology which teaches that homosexual conduct is contrary to the will and intended order of God, Plaintiffs also believe that homosexual conduct, like any other sin, can be overcome by the power of Jesus Christ.

34. Plaintiffs cite, for example, 1 Corinthians 6:9-11 which states:

> "Do you not know that the unrighteous will not inherit the kingdom of God? Do not be deceived. Neither fornicators, nor idolaters, nor adulterers, nor homosexuals, nor sodomites, nor thieves, nor covetous, nor drunkards, nor revilers, nor extortioners will inherit the kingdom of God. ***And such were some of you***. But you were washed, but you were sanctified, but you were justified in the name of the Lord Jesus and by the Spirit of our God." (emphasis added).

35. This passage inspired the title of a documentary on this subject entitled "Such Were Some of You." This documentary features interviews with leading researchers on this issue who have concluded that gender identity is fluid and is not an innate characteristic that an individual is born with. The film also features in-depth interviews and testimonials from formerly gay individuals who no longer identify themselves as homosexual.

36. Plaintiffs have seen the documentary and are in agreement with its premises, that one's sexual identity can change and that there is hope for people with unwanted same-sex attraction. These pastors have recommended, and would continue to recommend, the documentary to their congregations and counselees.

37. Plaintiffs believe that it is in the best interest of their counselees to have victory over sin and intend for their counselees to rely upon the Biblical truth they impart to them.

38. Because of the Act, however, the Plaintiffs believe that their free speech rights are restricted and that they are deprived of the right to further minister to those who seek their help. The Plaintiffs believe that exercising their religious liberty to speak and counsel according to the Biblical principles subjects them to potential liability and penalties.

## **THE RIGHTS OF PLAINTIFFS' COUNSELEES**

39. Plaintiffs also bring suit for a declaratory judgment protecting the rights of counselees in their congregations and others to receive pastoral counseling and teaching on matters of homosexuality, including whether the Bible treats homosexual conduct as a sin, disorder, or illness.

40. Because the Act creates and threatens legal penalties if Plaintiffs furnish counseling in contravention of Section 25, their counselees are deprived of pastoral counseling for unwanted same-sex attraction unless Plaintiffs willfully violate Section 25 and risk incurring the penalties therein. As a result, both the Plaintiffs and their counselees have suffered, and continue to suffer, an injury in fact.

41. Plaintiffs, as the spiritual leaders and authorities of their congregations, have a sufficiently close relationship with their members and counselees to act on their behalf. Illinois law acknowledges the special relationship between pastors and those whom they minister, especially young people and their families, by clothing that relationship with a clergy-penitent privilege. (*See*, 735 ILCS 5/8-803). That privilege recognizes and protects the inherent religious and privacy interests of the both the clergy and the penitent in their communications with one another.

42. Insisting that counselees bring suit individually would subject them to unnecessary hardship. A lawsuit of this nature would expose the counselees to loss of privacy and subject them to a prolonged and highly publicized trial. Counselees struggling with unwanted same-sex attraction, some of them minors, are particularly vulnerable emotionally, spiritually, or otherwise, and stand to lose the most from an arduous litigation process.

43. As such, Plaintiffs are in the best position to assert and protect the rights of their counselees. Singleton v. Wulff, 428 U.S. 106 (1976).

44. The Plaintiffs' counselees have several rights at stake in this litigation. The United States Supreme Court, for example, has decreed that "[a]t the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life." Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992).

45. An individual's right to dignity, autonomy, and self-determination has been upheld as recently as the *Obergefell* same-sex marriage decision, in which Justice Kennedy stated that the liberties protected by the Fourteenth Amendment "extend to certain personal choices central to individual dignity and autonomy, *including intimate choices that define personal identity and beliefs*." Obergefell v. Hodges, 135 S.Ct. 2584, 2597 (2015). (emphasis added).

46. Moreover, individuals who struggle with unwanted same-sex attraction are denied the opportunity to receive information and learn from counseling which would help them in their time of need. The Act prevents these individuals from learning about how others in the same situation managed to find victory over their struggles. The Act deprives some individuals who are told or think that they are "gay," and who do not want to be gay, of information they need to make their own personal intimate choice defining their sexual identity.

47. By prohibiting any pastoral counseling which describes homosexual conduct as a disorder or sin, even to those who struggle with unwanted same-sex attraction and who willingly seek to benefit from such counseling, the Act infringes on counselees' rights to privacy, autonomy, dignity, self-determination and personal choice.

48. Furthermore, the Act violates the counselees' free exercise of religion. By prohibiting the Plaintiffs from speaking on sexual identity from a Biblical point of view, the Plaintiffs'

9

counselees are deprived of the same Biblical teaching they seek in order to conform their lifestyles to their religious faith.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A. Enter a declaratory judgment that pastors, including those who are compensated for their pastoral work, fall outside "trade or commerce" and cannot be subject to the Act;

B. Enter a declaratory judgment that the Act, as applied to the Plaintiffs, violates the Free Speech Clause of the United States Constitution and the Constitution of the State of Illinois;

C. Enter a declaratory judgment that the Act, as applied to the Plaintiffs, violates the Free Exercise Clause of the United States Constitution and the Constitution of the State of Illinois;

D. Enter a declaratory judgment that the Act, as applied to the Plaintiffs, violates the Illinois Religious Freedom Restoration Act;

E. Enter a declaratory judgment that the Act, as applied to the counselees, violates the violates the Free Speech Clause of the United States Constitution and the Constitution of the State of Illinois;

F. Enter a declaratory judgment that the Act, as applied to the counselees, violates the Due Process Clause as protected by the 14th Amendment to the United States Constitution;

G. Enter a declaratory judgment that the Act, as applied to the counselees, violates the Free Exercise Clause of the United States Constitution and the Constitution of the State of Illinois;

H. Enter a declaratory judgment that the Act, as applied to the counselees, violates the Illinois Religious Freedom Restoration Act;

I. Award attorney fees, expenses and costs to Plaintiffs pursuant to 42 U.S.C. §1988(b), 775 ILCS 35/20, and 740 ILCS 23/5(c), and

    J.   Grant other just relief.

Respectfully submitted this 11th day August, 2016.

                                               **PASTORS PROTECTING YOUTH ET AL.**

                                               By: /s John W. Mauck
                                                        One of their Attorneys

John W. Mauck, Esq.
Noel W. Sterett, Esq.
Sorin A. Leahu, Esq.
**Mauck & Baker, LLC**
One N. LaSalle St., Suite 600
Chicago, Illinois 60602
Telephone: 312-726-1243
Facsimile: 866-619-8661
jmauck@mauckbaker.com
nsterett@mauckbaker.com
*Counsel for Plaintiffs*

11